**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DWIGHT ROBERSON,

     Petitioner,                     Civil Action No. 11-11588
                                      HONORABLE MARK A. GOLDSMITH
v.                                 UNITED STATES DISTRICT JUDGE

SHANE JACKSON,

     Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Dwight Roberson, presently confined at the Muskegon Correctional Facility in Muskegon, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, Petitioner challenges his conviction for first-degree home invasion, Mich. Comp. Laws § 750.110a(2), second-degree home invasion, Mich. Comp. Laws § 750.110a(3), receiving or concealing stolen property valued between $200 and $1,000, Mich. Comp. Laws § 750.535(4)(a), malicious destruction of a house, causing damages between $1,000 and $20,000, Mich. Comp. Laws § 750.380(3)(a), and participating in a criminal enterprise, Mich. Comp. Laws § 750.159i. The trial court sentenced Petitioner, as a second-habitual offender, Mich. Comp. Laws § 769.10, to concurrent terms of 20 to 30 years in prison for the first-degree home invasion and criminal enterprise convictions, 10 to 15 years for the second-degree home invasion conviction, 2 to 5 years for the malicious destruction conviction, and time served for the receiving or concealing conviction. For the reasons stated below, the petition for a writ of habeas corpus is denied.

## I. BACKGROUND

Petitioner was convicted of the above charges following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> The prosecutor charged defendant and four codefendants with participating in four Detroit robberies: breaking and entering Your Place Lounge located at 17326 East Warren early on August 31, 2008, invading a residence on Woodhall Street on September 27, 2008, and robbing two other Woodhall Street residences on September 29, 2008. The robbery targets all were located within three blocks of one another.
>
> Defendant undisputedly occupied a residence located at 4889 Woodhall Street, in the midst of the robbery targets. Detroit police officers testified that they first investigated a potential connection between 4889 Woodhall Street and the robberies immediately after the August 31, 2008 breaking and entering of the lounge, to which 4889 Woodhall was the closest residence, immediately adjacent to the lounge across an alley. Officers observed suspect movement inside 4889 Woodhall, entered the house, found liquor, pieces of a cash register, and other items taken from the lounge, and arrested defendant and his four charged codefendants, who were released days later.
>
> Several Woodhall Street residents testified about the robberies of their houses, and two residents recalled seeing four to six African–American males engaged in suspicious behavior on Woodhall Street in the early morning hours of September 29, 2008. The suspicious behavior included pushing a trash receptacle full of pipes down the sidewalk and carrying a large duffel bag, which items the group transported to 4889 Woodhall. The trash receptacle bore the address of one of the broken and entered homes. None of the Woodhall Street residents could identify defendant as one of the Woodhall home invaders. However, later on September 29, 2008, the police descended on 4889 Woodhall and arrested defendant and a codefendant as they tried to flee from the house; police arrested another codefendant inside the house. At the time of the arrests, the police found the trash receptacle containing <u>copper</u> piping stolen from one of the Woodhall Street houses, a Wii game system stolen from another Woodhall residence, and several other items of stolen property from the three invaded Woodhall homes.

People v. Roberson, No. 291436, 2010 WL 2292011, at *1 (Mich. Ct. App. June 8, 2010).

Following his sentencing, Petitioner filed a claim of appeal with the Michigan Court of Appeals, raising the same claims raised in his initial habeas petition. The Court of Appeals affirmed his convictions and sentences. Id. at *8. Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, raising the same claims. On December 20, 2010, the Michigan Supreme Court denied the application. People v. Roberson, 791 N.W.2d 443 (Mich. 2010). On April 14, 2011, Petitioner filed his habeas petition. (Dkt. 1). The proof of service was signed and dated April 6, 2011. On August 29, 2012, Petitioner filed a motion to stay proceedings and hold his habeas petition in abeyance. On October 1, 2012, the Court entered an order holding Petitioner's petition in abeyance. 10/1/2012 Op. & Order (Dkt. 10). The Court also administratively closed the case.

Petitioner returned to the trial court and filed a post-conviction motion for relief from judgment pursuant to Mich. Ct. R. 6.500, et. seq., with the Wayne County Circuit Court, which was denied. People v. Roberson, No. 08-14259-01 (Wayne County Circuit Court, December 11, 2012). The Michigan appellate courts denied Petitioner leave to appeal. People v. Roberson, No. 315525 (Mich. Ct. App. October 8, 2013); lv. den. 791 N.W.2d 443 (Mich. 2014). Petitioner then filed an amended habeas petition on December 24, 2014. (Dkt. 11).

On November 2, 2016, Petitioner filed a motion to reopen his petition for a writ of habeas corpus (Dkt. 17) and on November 4, 2016, he filed a motion to amend his petition (Dkt. 18). On December 12, 2016, the case was reopened and placed on the court's active docket. (Dkt. 19). Respondent filed a supplemental answer on January 31, 2017. (Dkt. 20). Petitioner filed a reply on March 13, 2017, (Dkt. 22) and the brief in support of his reply to respondent's supplemental answer on April 3, 2017. (Dkt. 23).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Mr Roberson was denied his state and federal right to a fair trial when the judge instructed the jury on the theory of engaging in a continuing criminal enterprise under which he had not been charged. Furthermore, defense trial counsel was constitutionally ineffective in assenting to the incorrect charge[.]

II. Mr Roberson was denied his state and federal due process rights to notice of the charges against him when the trial judge instructed the jury on the theory of engaging in a continuing criminal enterprise under which he had not been charged.

III. Mr Roberson was denied his state and federal rights to due process of law and a fair trial through the prosecutor's misconduct in shifting the burden of proof to him, questioning him about privileged communication with trial counsel, questioning him about whether he would present a witnesses who had their own rights against self-incrimination, and commenting on Mr Roberson's privileged communications during closing argument.

IV. Trial counsel was ineffective by failing to investigate and call alibi witnesses.

V. Trial and appellate counsel were ineffective by failing to raise scoring issues.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

The Supreme Court has explained that "a federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 559 U.S. 766, 773 (2010), quoting Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997); Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (per curiam). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011), citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004), The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. A habeas petitioner should be denied

5

relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. See Woods v. Etherton, 136 S. Ct. 1149, 1152 (2016).

### III. DISCUSSION

**A. Claims # 1 and 2 - the jury instruction claims**

Petitioner alleges that he was denied his right to a fair trial when the trial court judge instructed the jury on a theory of engaging in a continuing criminal enterprise under which he had not been charged, and that trial counsel was ineffective in assenting to the incorrect charge. The charging documents filed by the prosecutor charged Petitioner with a criminal enterprise in violation of Mich. Comp. Laws § 750.159i(1): "A person employed by, or associated with, an enterprise shall not knowingly conduct or participate in the affairs of the enterprise directly or indirectly through a pattern of racketeering activity." The trial judge's final instructions involving criminal enterprise liability, however, focused solely on an alternate theory contained in Mich. Comp. Laws § 750.159i(2): "A person shall not knowingly acquire or maintain an interest in or control of an enterprise or real or personal property used or intended for use in the operation of an enterprise, directly or indirectly, through a pattern of racketeering activity." Petitioner argues that the judge's final instructions amounted to an impermissible constructive amendment of the charge.

Respondent claims that Petitioner's claims are procedurally defaulted because his counsel failed to preserve the issue at trial and the Michigan Court of Appeals relied on that failure in rejecting Petitioner's claim. Petitioner argues that counsel was ineffective in failing to object to the amendment of the information. Ineffective assistance of counsel may establish cause for procedural default. Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of

Petitioner's defaulted claims, it would be easier to consider the merits of the underlying claims. See Cameron v. Birkett, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

A state criminal defendant has a due process right to be informed of the nature of the accusations against him or her. Lucas v. O'Dea, 179 F.3d 412, 417 (6th Cir. 1999). Notice and opportunity to defend against criminal charges as guaranteed by the Sixth Amendment to the United States Constitution are an integral part of the due process protected by the Fourteenth Amendment and therefore apply to state prosecutions. Cole v. Arkansas, 333 U.S. 196, 201 (1948); In Re Oliver, 333 U.S. 257, 273 (1948). "The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." Olsen v. McFaul, 843 F.2d 918, 930 (6th Cir. 1988).

A complaint or indictment need not be perfect under state law so long as it adequately informs the petitioner of the crime in sufficient detail so as to enable him or her to prepare a defense. Therefore, an indictment "which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." Mira v. Marshall, 806 F.2d 636, 639 (6th Cir. 1986); see also Dell v. Straub, 194 F. Supp. 2d 629, 653-54 (E.D. Mich. 2002). An alleged defect in a state court information or indictment is not constitutional error unless a habeas petitioner can establish that: (1) he did not receive adequate notice of the charges; and (2) he was denied the opportunity to defend himself against the charges. See Roe v. Baker, 316 F.3d 557, 570 (6th Cir. 2002). In addition, "[w]hen reviewing amendments to state charging documents in habeas corpus proceedings, the federal courts focus on the questions whether the defendant was surprised by the amendment or otherwise prejudiced in his ability to defend himself at trial." Rhea v. Jones, 622 F. Supp. 2d 562, 583 (W.D.

7

Mich. 2008), citing <u>Tague v. Richards</u>, 3 F.3d 1133, 1141–42 (7th Cir. 1993); <u>Wright v. Lockhart</u>, 854 F.2d 309, 312–13 (8th Cir. 1988).

An accused's constitutional right to notice of the criminal charge or charges brought against him or her can be satisfied by other means, such as a preliminary examination. <u>See</u> <u>Stevenson v. Scutt</u>, 531 F.App'x 576, 580 (6th Cir. 2013) (noting that victim's testimony from the preliminary examination provided Petitioner with notice of the time frame of the assaults).

At Petitioner's preliminary examination, James Christman testified that his lounge had been broken into and that the cash register drawer and twenty to twenty-five bottles of liquor were removed from the premises. 10/23/2008 Tr. at pp. 25-28 (Dkt. 8-2).

Detroit Police Officer Anthony Byrd testified that shortly after the break-ins, he found Petitioner and his codefendants at 4889 Woodhall Street, in the midst of the four robbery targets with the cash register drawer and liquor. <u>Id</u>. at 36.

Andre Taylor testified that his house had been broken into and the following items were taken: "A Wii system and video games, a majority of my clothes, all my son's clothes were missing." <u>Id</u>. at 56. Taylor further testified, "I had a computer and I had a laptop computer, both those were gone. I had a change bucket, it had approximately $600 in change in it. A lot of my wife's jewelry was gone. There was a dolly that was missing. We had just purchased a lawn mower and that was missing." <u>Id</u>.

Peasie Taylor, another neighbor unrelated to Andre Taylor, testified that someone broke into her house on September 29, 2008, and took costume jewelry, two phones, purse, credit card, keys, wallet from the house and a gaming system from the garage. <u>Id</u>. at 69-70.

Elvis Reynolds, Peasie Taylor's grandson, testified that on September 29, 2008, his grandmother notified him of a break-in at her house. He further testified that he met officers at

her house on 4150 Woodhall Street and then went to 4889 Woodhall Street where the police had him identify the two stolen phones and costume jewelry. Id. at 82-85.

Detroit Police Officer Diandre Pitts testified that on September 29, 2008, she responded to two radio runs on Woodhall Street. At 4150 Woodhall, Peasie Taylor reported several items stolen which included phones, house keys, jewelry and her purse. At 4128, Ann Wilk reported copper piping taken from the house. Id. 99-101. Officer Pitts testified that during her investigation, a neighbor pointed her to a "hang out" house at 4889 Woodhall Street. Id. at 105-106. Pitts testified "when I first went to the house no one was there. We found some copper piping at that house, the first time we went." Id. at 107. Later that morning, while riding past 4889 Woodhall, Pitts testified that she saw the curtains move, so she stopped to investigate. When she went to the front door, "people started running everywhere." Id. Earlier that morning she found copper piping in a duffle bag at that location. Id. at 107-108. When she returned later that morning, she found a Wii system in a red backpack with costume jewelry. An empty Scooby-Doo popcorn tin was also found at the location. Id. at 111. Pitts testified that four individuals were present at the 4889 Woodhall Street location and that she recognized the four individual arrested that morning. She later clarified that three were arrested at the house and Brandon Pitts was "arrested previously out on the street." Id. at 109-110, 112, 119. Officer Pitts testified that Petitioner was one of the individuals arrested at the house and one of the stolen phones was retrieved from his right, front pocket.

Anne-Marie Wilk testified that she lives three doors down from Peasie Taylor. She testified that the interior of the house had been redone a year and a half ago. Id. at 89. Ms. Wilk further testified that on September 29, 2008, she locked her doors and windows before leaving the house and when she returned, the heat radiators in numerous rooms and copper piping had been torn out and removed from the house and that her black duffle bag and a black garbage dumpster

were missing.  Wilk testified that the total amount of damage done to the house amounted to $ 15,000 - $16,000.  Id. at 89-92.

Petitioner does not contest the elements of the charged offenses but argues that the trial court deprived him of due process and a fair trial when it instructed the jury on the uncharged theory of criminal enterprise liability.  However, Petitioner is unable to show that he was surprised by the amendment of the information or that he was prejudiced in his ability to defend himself at trial.  The witnesses' testimony from the preliminary examination clearly put Petitioner on notice as to the nature of the charges against him.

Moreover, Petitioner was convicted by a jury after a trial.  The Ninth Circuit has observed that neither Cole v. Arkansas nor In re Oliver "foreclose the premise that constitutionally adequate notice may come from evidence presented at trial."  See Troches v. Terhune, 74 F.App'x 736, 737 (9th Cir. 2003).  The witnesses' testimony given at the preliminary examination and at trial was sufficient to afford Petitioner adequate notice of the charges against him.  See Bruce v. Welsh, 572 F.App'x 325, 331 (6th Cir. 2014).

The Michigan Court of Appeals rejected Petitioner's claim as follows:

> The charging documents filed by the prosecutor consistently charged defendant with a criminal enterprise violation of M.C.L. 750.159i(1): "A person employed by, or associated with, an enterprise shall not knowingly conduct or participate in the affairs of the enterprise directly or indirectly through a pattern of racketeering activity."  The jury instructions focused on a distinct theory found in M.C.L. 750.159i(2): "A person shall not knowingly acquire or maintain an interest in or control of an enterprise or real or personal property used or intended for use in the operation of an enterprise, directly or indirectly, through a pattern of racketeering activity." (Emphasis added).  The trial court's jury instruction essentially amended the terms of the prosecutor's charging documents.

***

Here, the trial court's instruction of the jury with respect to the elements of criminal enterprise responsibility pursuant to MCL 750.159i(2) did not charge defendant with a new crime, but merely a different theory of criminal enterprise liability than the prosecutor initially charged under MCL 750.159i(1). Furthermore, defendant cannot genuinely claim unfair surprise or other prejudice arising from the trial court's jury instruction incorporating the elements of subsection (2). At the lengthy preliminary examination, the prosecutor presented much of the same evidence elicited at trial, including police officer testimony that on August 31, 2008 defendant was arrested at 4889 Woodhall Street in the presence of liquor bottles and the cash register stolen from the lounge, and that on September 29, 2008 he was arrested at 4889 Woodhall Street with a stolen cell phone in his pocket and other items stolen from the three targeted Woodhall Street residences sitting in and around 4889 Woodhall. The prosecutor summarized at the preliminary examination defendant's participation in the criminal enterprise, in pertinent part as follows:

We have Mr. Roberson who is present immediately after the breaking and entering the bar. You have Mr. Roberson. You have Mr. Randall. You have Mr. Pitts all being present at the address of 4889 Woodhall, which is right behind the bar. Within the same hour that the alarm went off they're tracked down by the blood trail of Mr. Randall. He's the person bleeding when they get into that house, but the blood trail is followed to that location. It stops at the grass. But once they get in there they see Mr. Randall who is bleeding and they see all the stolen items from the bar at that location: the liquor bottles, the beer and the cash register.

* * *

The same goes for the location of the home invasions. Two of the home invasions happened the exact same night, September 29th of 2008, that's at 4150 Woodhall and 4128 Woodhall. They happen in the same manner. The windows were pried open or broken and then items are missing and the back doors are either unlocked or open. I assume, if they got in through the window, opened the back door and left through that when they stole all the property.

Again, there's no eyewitness testimony but there is certainly circumstantial evidence.... Mr. Pitts is found not only with Ms. Taylor's cell phone within hours of that B and E, he fits the description the officers received from a witness and he also has the house keys of the victim on his person when he was arrested at a different location from everybody else. Everybody else was arrested at that 4889 Woodhall, that being Mr. Roberson, Mr. Pitts [sic] and Mr. Copeland.

11

Mr. Copeland and Mr. Roberson had items on them specifically from the home invasions. Mr. Roberson had the cell phone of Ms. Taylor's....

Also, at that location,.... I would say that they're acting in control of these items because the black duffel bag, which has the copper piping....

You also have the item from 4303 Woodhall, the popcorn tin, which was pretty specific, Scooby–Doo popcorn tin, which had approximately $600 worth of change in it, as well as the Nintendo Wii that Mr. Copeland had in the backpack along with the jewelry. Everybody was arrested in that location and tied to that.

From the time of the preliminary examination, defendant had reasonable notice that the manner in which the prosecutor intended to prove his criminal enterprise culpability for the breaking and entering and home invasions at least in large part rested on defendant's hosting of or association with his charged codefendants at 4889 Woodhall and the storage of stolen property there.

Moreover, the amendment in no way altered the nature of defendant's trial defense or the evidence supporting the defense. At trial, defendant denied any participation in the charged breaking and entering or home invasions, maintaining that he spent many days away from 4889 Woodhall Street in September 2008, and that when staying at 4889 Woodhall he was nearly always inebriated and never noticed any stolen property there. Defense counsel also highlighted the lack of physical evidence or eyewitness testimony tying defendant to any of the charged crimes. The chosen defenses applied with equal force irrespective whether the prosecutor pursued defendant's criminal enterprise conviction under M.C.L. 750.159i(1) or (2). McGee, 258 Mich. App. at 688.

People v. Roberson, 2010 WL 2292011, at *3–4. (emphasis original) (footnotes omitted).

The trial court's jury instruction did not alter Petitioner's trial defense or the evidence supporting his defense.  Petitioner is unable to establish that instructing the jury on an uncharged theory of criminal enterprise liability denied him of due process and a fair trial.

When Petitioner's case is reviewed pursuant to the AEDPA's "double deference" standard, this Court is unable to state that the Michigan Court of Appeals unreasonably determined that the

trial court abused its discretion to the extent that it amended the information. Petitioner is not entitled to habeas relief on his first and second claims.

### B. Claim # 3 - the prosecutorial misconduct claim

Petitioner alleges that he was denied his right to a fair trial and due process because the prosecutor shifted the burden of proof, questioning him about privileged communication with trial counsel, questioned him about whether he would present witnesses who had their own rights against self-incrimination, and commented on privileged communications during closing argument. Respondent contends that the prosecutorial misconduct claim is defaulted, because this issue was not preserved by a contemporaneous objection at trial, and the Michigan Court of Appeals relied on this failure to reject Petitioner's claim. People v. Roberson at *5-7.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless the petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750-51 (1991). If the petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. Smith v. Murray, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. Murray v. Carrier, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a Petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. Schlup v. Delo, 513 U.S. 298, 324 (1995). Actual innocence, which would

permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998).

The Michigan Court of Appeals clearly indicated that by failing to object at trial, Petitioner had not preserved his prosecutorial misconduct claim. The fact that the Michigan Court of Appeals engaged in plain error review of Petitioner's claim does not constitute a waiver of the state procedural default. Seymour v. Walker, 224 F.3d 542, 557 (6th Cir. 2000). Instead, this Court should view the Michigan Court of Appeals' review of Petitioner's claim for plain error as enforcement of the procedural default. Hinkle v. Randle, 271 F.3d 239, 244 (6th Cir. 2001). Petitioner's third claim is procedurally defaulted.

Petitioner has failed to allege any reasons to excuse his procedural default. Although ineffective assistance of counsel may be cause to excuse a procedural default, that claim itself must be exhausted in the state courts. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). Petitioner raised several ineffective assistance of counsel claims in the state courts, but he did not raise a claim that counsel was ineffective for failing to preserve the prosecutorial misconduct issue. Because Petitioner never raised in the Michigan courts a specific claim about trial counsel's failure to object to the alleged prosecutorial misconduct, any alleged ineffectiveness of counsel cannot constitute cause to excuse Petitioner's default with respect to his third claim. See Wolfe v. Bock, 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006). Thus, it is unnecessary to reach the prejudice issue regarding these prosecutorial misconduct claims. Smith, 477 U.S. at 533.

Additionally, Petitioner has not presented any new reliable evidence to support any assertion of innocence that would allow this Court to consider his prosecutorial misconduct claim as a ground for a writ of habeas corpus in spite of the procedural default. Because Petitioner has

not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review Petitioner's third claim on the merits. See Harris v. Stegall, 157 F. Supp. 2d 743, 751 (E.D. Mich. 2001). Petitioner's third claim is procedurally barred.

### C. Claims # 4 and 5 - the ineffective assistance of counsel claims

In his fourth claim, Petitioner alleges that counsel was ineffective for failing to call alibi witnesses on his behalf at trial and that appellate counsel was ineffective by failing to raise this issue in his direct appeal. In his fifth claim, Petitioner alleges that trial counsel was ineffective for failing to object to the trial court assessing 10 points against Petitioner under offense variable 9 when "2 to 9 victims are placed in danger of . . . loss of property." Petitioner also claims that appellate counsel was ineffective for failing to raise this claim on his appeal of right.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a petitioner must satisfy a two prong test. First, the petitioner must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687 (1984). In so doing, the petitioner must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. Strickland, 466 U.S. at 689. Second, the petitioner must show that such performance prejudiced his defense. Id. To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Supreme Court's

holding in <u>Strickland</u> places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. <u>See</u> <u>Wong v. Belmontes</u>, 558 U.S. 15, 27 (2009).

Petitioner initially brought his fourth claim in his motion for relief from judgment. The trial court judge rejected the claim finding that Petitioner failed to set forth the substance of his alibi defense or provide the court with affidavits from his proposed witnesses. <u>Roberson</u>, 08-14259-01, *2 (Wayne County Cir. Ct. Dec. 11, 2012). The trial court judge also found that as a result, "it is impossible to evaluate or document his claim of innocence now or find that either his trial counsel or appellate counsel was 'ineffective' in failing to raise that issue." <u>Id</u>.

At the time petitioner filed his motion for relief from judgment, he briefly mentioned the names of several witnesses that he contends should have been called on his behalf, but failed to attach any affidavits from these witnesses. Petitioner has now filed a motion for leave to file his sworn affidavit (Dkt. 24). The Court grants petitioner leave to file his sworn affidavit, but finds the affidavit insufficient to support petitioner's claim. Petitioner's sworn affidavit again lists the names of his proposed witnesses but does not attach any affidavits from these witnesses concerning their proposed testimony and willingness to testify on his behalf (Dkt. 25).

Petitioner's amended habeas petition contains one other affidavit, which is not notarized, from codefendant Delvonne Randall, claiming petitioner was asleep elsewhere during the crimes. Because the affidavit was never notarized, it cannot serve as a basis for establishing petitioner's ineffective assistance of counsel claim. <u>See</u>, <u>e.g.</u>, <u>Clark v. Waller</u>, 490 F.3d 551, 553, 558 (6th Cir. 2007) (unauthenticated affidavit from person whom petitioner claims should have been called

as a defense witness could not support ineffective assistance of counsel claim). The remaining affidavits attached to the amended petition are blank, without any indication of the willingness of the other named witnesses to testify or the substance of any proposed testimony.

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. See Workman v. Bell, 178 F.3d 759, 771 (6th Cir. 1998). By failing to present any evidence to the state courts in support of his ineffective assistance of claim, petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. See Cooey v. Coyle, 289 F.3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Petitioner has failed to attach any offer of proof or any affidavits sworn by the proposed witnesses. Petitioner has offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether the witnesses would have been able to testify and what the content of these witnesses' testimony would have been. In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. See Clark v. Waller, 490 F.3d at 557.

Moreover, Petitioner has failed to show that presenting any alibi witnesses would have led to his acquittal, in light of the fact that eyewitness testimony placed Petitioner in the area at the time of the crimes. A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. See Millender v. Adams, 376 F.3d 520, 527 (6th Cir. 2004). The failure to present proposed alibi witnesses who would not lead to a defendant's acquittal does not amount to the ineffective assistance of counsel. Id.

In his fifth claim, Petitioner argues that trial counsel was ineffective for failing to object to the scoring of offense variable 9 of the sentencing guidelines.

A right to the effective assistance of counsel exists during sentencing in both noncapital and capital cases. See Lafler v. Cooper, 132 S. Ct. 1376, 1385-86 (2012). Although sentencing does not involve a criminal defendant's guilt or innocence, "ineffective assistance of counsel during a sentencing hearing can result in Strickland prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.'" Lafler, 132 S. Ct. at 1386, quoting Glover v. United States, 531 U.S. 198, 203 (2001).

Petitioner initially raised this claim in his motion for relief from judgment. The trial court judge denied the motion, finding that offense variable (OV) 9 had been correctly scored, thus, counsel was not ineffective for failing to object to the scoring of OV 9 at 10 points. People v. Roberson, No. 08-14259-01, *2 (Wayne County Cir. Ct., Dec. 11, 2012). The Michigan Court of Appeals and the Michigan Supreme Court subsequently denied the Petitioner leave to appeal.

Petitioner also challenged the scoring of OV 16, which assessed 5 points based on a finding of property damage between $1,000 and $20,000. Although Petitioner believes that he should have been scored 0 points for OV 16, the trial court judge found ample evidence, citing the recovered good along with the property damage, to satisfy the scoring. Id.

The trial court judge concluded that there was a factual basis for the scoring of the Michigan's Sentencing Guidelines and the Michigan appellate courts upheld this ruling.

As the Eleventh Circuit has noted, when the alleged attorney error involves the failure to object to a violation of state law that does not involve the enforcement of federal constitutional rights or interests, there is no Supreme Court case which prevents a federal court sitting in habeas

review of a state court conviction from looking "to whether there is a reasonable probability that the do-over proceeding state law provides would reach a different result." See Hammond v. Hall, 586 F.3d 1289, 1340 (11th Cir. 2009).

In this case, the trial judge concluded that there was a factual basis for the scoring of offense variables 9 and 16 under the Sentencing Guidelines and the Michigan appellate courts upheld this ruling. Petitioner is therefore unable to show that he was prejudiced by his counsel's purported ineffectiveness in failing to object to the scoring of his sentencing guidelines. See Coleman v. Curtin, 425 F.App'x 483, 485 (6th Cir. 2011). If "one is left with pure speculation on whether the outcome of . . . the penalty phase could have been any different," there has been an insufficient showing of prejudice. Baze v. Parker, 371 F.3d 310, 322 (6th Cir. 2004). Because Petitioner has offered no evidence to show that the state trial court judge would have been inclined to impose a lesser sentence, Petitioner is unable to show that he was prejudiced by his counsel's purported ineffectiveness in failing to object to the scoring of offense variables 9 and 16. See Spencer v. Booker, 254 F.App'x 520, 525-26 (6th Cir. 2007). Petitioner is not entitled to relief on his sentencing claims.

Petitioner also contends appellate counsel was ineffective for failing to raise his fourth and fifth claims in his appeal of right.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. Evitts v. Lucey, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. Jones v. Barnes, 463 U.S. 745, 751 (1983). This Court has already determined that Petitioner's fourth and fifth claims are without merit. "[A]ppellate counsel cannot

be found to be ineffective for 'failure to raise an issue that lacks merit.'" <u>Shaneberger v. Jones</u>, 615 F.3d 448, 452 (6th Cir. 2010) (quoting <u>Greer v. Mitchell</u>, 264 F.3d 663, 676 (6th Cir. 2001)). Because the claims cannot be shown to be meritorious, appellate counsel was not ineffective in the handling of Petitioner's direct appeal. Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

### D. Certificate of Appealability and Leave to Proceed In Forma Pauperis on Appeal

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. <u>See</u> 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. <u>See</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. <u>Id</u>. at 336-37. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. <u>Castro v. United States</u>, 310 F.3d 900, 901 (6th Cir. 2002).

Likewise, when a district court denies a habeas petition on procedural grounds without reaching prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if petitioner shows that jurists of reason

would find it debatable whether petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. <u>Slack</u>, 529 U.S. at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. <u>Id</u>.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right and that reasonable jurists would not debate the Court's conclusion that the petition should be denied. Accordingly, a certificate of appealability is not warranted in this case.

Although this Court will deny a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed <u>in forma pauperis</u> (IFP) is a lower standard than the standard for certificates of appealability. <u>Foster v. Ludwick</u>, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002), citing <u>United States v. Youngblood</u>, 116 F.3d 1113, 1115 (5th Cir. 1997). Whereas a certificate of appealability may only be granted if Petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. <u>Id</u>. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. <u>Foster</u>, 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed <u>in forma pauperis</u> on appeal. <u>Id</u>.

## IV. CONCLUSION

For the reasons stated above, the Court denies the petition (Dkt. 1), declines to issue a certificate of appealability, and grants leave to proceed in forma pauperis on appeal.

SO ORDERED.

Dated: March 26, 2018                         s/Mark A. Goldsmith
         Detroit, Michigan                   MARK A. GOLDSMITH
                                           United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 26, 2018.

                                       s/Karri Sandusky
                                       Case Manager